FILED

2018 Sep-06  AM 10:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHWESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | |
| SUNKEY PUBLISHING, INC., a corporation, | |
| SUN KEY PUBLISHING, LLC, a limited liability company, | |
| FANMAIL.COM, LLC., a limited liability company, | CIVIL ACTION NO.: |
| WHEREDATA, LLC, a limited liability company, | |
| CHRISTOPHER UPP, individually and as an officer of SUNKEY PUBLISHING, INC., SUN KEY PUBLISHING, LLC, and WHEREDATA, LLC, | |
| MARK VAN DYKE, individually and as an officer of SUNKEY PUBLISHING, INC. AND SUN KEY PUBLISHING, LLC, | |
| LON BROLLIAR, individually and as an officer of FANMAIL.COM, LLC, and | |
| ANDREW DORMAN, individually and as an officer of FANMAIL.COM, LLC, | |
| Defendants. | |

## COMPLAINT FOR CIVIL PENALTIES, PERMANENT INJUNCTION, AND OTHER EQUITABLE RELIEF

Plaintiff, the United States of America, acting upon notification and authorization to the Attorney General by the Federal Trade Commission ("FTC"), pursuant to Section 16(a)(1) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 56(a)(1), for its Complaint alleges:

1.     Plaintiff brings this action under Sections 5(a), 5(m)(1)(A),13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45(a), 45(m)(1)(A), 53(b) and 57b, and the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. § 6101 *et seq.*, to obtain monetary civil penalties, a permanent injunction, and other relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, in connection with generating marketing leads to sell to educational and other institutions.

### JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(m)(1)(A), 53(b), 56(a), 6102(c), and 6105(b). This action arises under 15 U.S.C. § 45(a).

3.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2), 1395(a), and 15 U.S.C. § 53(b).

## **DEFENDANTS**

4.     Defendant Sunkey Publishing, Inc. ("Sunkey Inc.") is an Alabama corporation with its principal place of business in Huntsville, Alabama. Sunkey Inc. transacts or has transacted business in this district and throughout the United States.

5.     Defendant Sun Key Publishing, LLC ("Sun Key LLC") is an Alabama limited liability company with its principal place of business in Huntsville, Alabama. Sun Key Publishing transacts or has transacted business in this district and throughout the United States.

6.     Defendant WhereData, LLC ("WhereData") is an Alabama limited liability company with its principal place of business in Brownsboro, Alabama. WhereData is a fifty-percent owner of Sunkey Inc. and a fifty-percent owner and member of Sun Key LLC. WhereData transacts or has transacted business in this district and throughout the United States.

7.     Defendant Fanmail.com, LLC ("Fanmail") is an Alabama limited liability company with its principal place of business in Huntsville, Alabama. Fanmail transacts or has transacted business in this district and throughout the United States.

8.     Defendant Christopher Upp is an officer of Sunkey Inc. and Sun Key LLC, and is the manager of WhereData. At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.

4

Upp resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

9.  Defendant Mark Van Dyke is an officer of Sunkey Inc. and Sun Key LLC, and a member of Fanmail. At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. In connection with the matters alleged herein, Van Dyke transacts or has transacted business in this district and throughout the United States.

10.  Defendant Lon Brolliar is an officer and member of Fanmail. At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Fanmail, including the acts and practices set forth in this Complaint. Brolliar resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

11.  Defendant Andrew Dorman is an officer and member of Fanmail. At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Fanmail, including the acts and practices set forth in this complaint. Dorman resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

5

## COMMON ENTERPRISE

12.    At all times material to this Complaint, Defendants Sunkey Inc., Sun Key LLC, and WhereData (collectively, the "Sunkey Entities") have operated as a common enterprise while engaging in the deceptive and abusive acts and practices alleged below. The Sunkey Entities have conducted the business practices described below through interrelated companies that have common officers and directors, managers, business functions, employees, and office locations. Because the Sunkey Entities have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged below. Defendants Mark Van Dyke and Christopher Upp (collectively with the Sunkey Entities, the "Sunkey Defendants") have formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Sunkey Entities that constitute the common enterprise.

## COMMERCE

13.    At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS ACTIVITIES

### OVERVIEW

14.    The Sunkey and Fanmail Defendants target potential military recruits

6

and induce them to submit their information by disguising their websites and advertisements as official recruiting channels and representing that the information will be used solely for recruiting purposes. In reality, Defendants are gathering the information to sell as marketing leads to post- secondary schools for a price ranging between $15 and $40 per lead. The Sunkey Entities continue their deception during phone calls to consumers who submit information on their websites by holding themselves out as military representatives. Additionally, by marketing specific schools during those calls and featuring schools on their "recruitment" websites, Defendants provide the false impression that the military endorses those schools. Finally, the calls also violate the Do Not Call provisions of the Telemarketing Sales Rule because numerous consumers who submitted their information for military recruitment purposes never provided express written consent to receive telemarketing calls regarding post-secondary education. Defendants have made millions of dollars from the sale of their leads.

## DEFENDANTS' WEBSITES

15.    Both the Sunkey Entities and Fanmail have operated copycat military recruiting websites since at least 2010. As described below, these websites, some of which include army.com, armyreserves.com, and armyenlist.com, appear to be recruitment websites affiliated with the U.S. Military, rather than websites aimed at

collecting consumer information to be used as marketing leads for post-secondary schools.

### The Sunkey Defendants Generate Post-Secondary Education Leads Through Deceptive Military Recruitment Themed Websites and Advertisements

16.   Sun Key LLC owns and operates websites from which the Sunkey Defendants generate post-secondary education leads, including armyenlist.com, navyenlist.com, marinesenlist.com, coastguardenlist.com, nationalguardenlist.com, and airforceenlist.com (collectively, "Enlist Sites"), and armyreserves.com. WhereData owns the domain names for the Enlist Sites. Tens of thousands of consumers visit these websites each month.

### The Enlist Sites

17.   The Sunkey Defendants use internet search engine ads that appear as if they are official military recruiting advertisements – and make no mention of post-secondary education – to drive consumers interested in joining the military to their Enlist Sites. For example, the following was an internet search engine ad for the Sunkey

Join the U.S. Air Force
Contact a U.S. Air Force Recruiter!
Free Information Pack. No MSO.
airforceenlist.com

Defendants' website airforceenlist.com:  The Sunkey Defendants ran nearly identical search engine ads for marinesenlist.com, navyenlist.com, and nationalguardenlist.com.

8

18.     Other of their search engine ads contained the phrase, "The Army Wants You!" and "Coast Guard Wants You!"

19.     Internet search engine results for armyenlist.com also describes that website as an official military recruitment website and make no mention of post-secondary education:



Army Enlist: Home
www.armyenlist.com/ ⌄
Active Duty is a full time commitment. In many ways it is like having a full-time civilian job. A soldier's day is divided into work and off-hours. The length of service …

Requirements
To enlist in the Army Reserve you must be: Between the…

Reserve
When you join the Army Reserve, you can serve your…

7 Steps to Join
7 Steps to Join. Step 1 – Is The Army Right For Me? Any…

Contact Us
U.S. Army Information: To contact a recruiter Click…

ROTC
Army ROTC (Reserve Officers' Training Corps) is one of…

ASVAB Basics
Prepare for the Career you want, ACE THE ASVAB with…

Search results for nationalguardenlist.com are substantially similar and contain a "Contact Us" heading with text underneath that states, "U.S. National Guard Information: To contact a recruiter Click Here."

20.     The headings for search engine results for the websites navyenlist.com, marinesenlist.com, airforceenlist.com, coastguardenlist.com, and nationalguardenlist.com, state, "How To Join." The search results also contain links to additional subpages on the websites, with titles such as, "talk to a recruiter," "submit your application," and "take the ASVAB," which is a test used to determine

qualification for enlistment in the military.

21.    Consumers who land on the Sunkey Defendants' websites are directed to provide their contact information to obtain more information about joining the military or speaking with a military recruiter.

22.    None of the Enlist Sites advise consumers that they may be contacted by the specific Sunkey Entities.

*Armyenlist.com*

23.    A consumer who visited armyenlist.com between 2011 to late 2014 would have been shown the following screen:



24.    The   language   "A   Sun   Key   Publishing   Company,"   under

10

ARMYENLIST.COM, was added in mid-2013.

26.     Clicking on the red "Request Information" button took consumers to the following form:



26.     The form describes itself as an "Army Information Request" and tells consumers, "your personal information will not be shared with anyone else."

27.     Even after revising its website in or around May 2015, armyenlist.com continued representing itself as a military recruitment website:

11



28.    Currently, each subpage of the website contains a short form for consumers to submit their name and phone number entitled "get information about joining the army and educational opportunities." Above the form appears a hyperlink in red font urging consumers to "Click Here to request information pack [sic] about joining!"

29.    A consumer who completes and submits the short form or clicks on the hyperlink would be taken to the following longer form:



30.    The right-hand side of the Armyenlist.com landing page features a "Reenlist" hyperlink that appears under the "Prior Service" option. The hyperlink leads to the following form:

31.     The form urges consumers to "**Contact the U.S. Army**" and advises that "your personal information will not be shared with anyone else."

32.     The language in small text at the bottom of the website becomes visible only after scrolling down. A consumer could submit information on the website without seeing the disclaimer. Similar language appears on other of Defendants' websites.

<u>The "Enlist Sites" for Other Branches of the U.S. Armed Forces</u>

33.     A consumer who visits one of the other Enlist Sites would see a screen similar to the following:



The Enlist Sites for the other branches of the U.S. Armed Forces are substantially similar.

34.   The faint, small print next to the logo at the top of the page stating, "A Sun Key LLC Company," was added in 2013, and the text describing the website as

16

a "non-government privately-sponsored website" was added in 2015.

35.   Selecting the "Contact a Recruiter" or "Get Information About Joining" options on the Enlist Sites' screen as depicted in paragraph 33 would take a consumer to the following form:

36.     At least up until sometime in 2013, the top of the form appeared as follows:

## Get More Information About Joining

Do you want more information about the careers and benefits available in the U.S. Air Force? If so, fill out the form below. **You are under absolutely no obligation** to join and your personal information will not be shared with anyone else.

37.     The notice at the bottom of the form that advised consumers that they "may be contacted by AirforceEnlist.com via phone, email or text about military and education information" did not appear until sometime in 2013. The dropdown menu inquiring about consumers' interest in education opportunities did not appear until sometime later, and at least up until the end of 2015, the form pre-selected "I would like to discuss my options:"

38.     A form similar to the following appears at the bottom of numerous subpages of the Enlist Sites:

GET INFORMATION ABOUT JOINING THE AIR FORCE AND EDUCATIONAL OPPORTUNITIES

First Name

Last Name

Phone Number

CONTINUE

18

Consumers who completed this form would be taken to a longer form, but would still receive a call from the Sunkey Defendants even if they did not complete the longer form.

*Armyreserves.com*

39.     The Sunkey Defendants use the following keyword metatags for armyreserves.com so that it will appear in results when consumers search for information on joining the military: "US Army Reserves," "US Army," "Army," "Army Reserves," "Reserve," "Reserve Requirements," "7 Steps to Join," "News," "Latest News," "Two Weeks a Year - One Weekend a Month," "Reserve," "Reserve Benefits," "Reserve Pay," and "Benefits."

40.     Internet search engine results for armyreserves.com describes the website as an official military recruitment website and make no mention of post-secondary education:



41.    To    drive    consumers    interested    in    joining    the    military    to armyreserves.com, the Sunkey Defendants use internet search engine ads that appear as if they are official military recruiting advertisements and make no mention of post-secondary education:



42.    A consumer who visited armyreserves.com would be shown a screen similar to the following:



43.   Clicking on the "Contact A Recruiter" hyperlink under the heading on the left- hand side of the website that states, "CONTACT US ARMY RESERVES," takes a visitor to a webpage that appears as follows:



44.     Beneath the green heading that states "Contact A Recruiter," the following language appears: "Are you ready to talk to a recruiter about the careers and benefits available in the U.S. Army Reserves? If so, fill out the form below. You are under absolutely no obligation to join and your personal information will not be shared with anyone else."

45.     The drop-down menu at the bottom of the form and the question next to it, "Are you interested in education opportunities?" did not appear until sometime in 2015. The default option is, "I would like to discuss my options." The other available options are: "I am very interested;" "I am taking college classes now;" and "I am only interested in the military." Consumers received calls about schools even if they selected the option, "I am only interested in the military."

46.     Upon clicking the "submit" button at the bottom of the form, a confirmation screen appears that states:

> Thank you for your request about joining the U.S. Military! Your information has been submitted. Someone will call or text you shortly to verify your information and discuss your education opportunities. If you don't receive a call or if you don't get the email we have a list of recruiter phone numbers for your convenience.

Embedded in the text "recruiter phone numbers" is a hyperlink that takes the consumer to the list of recruiter phone numbers.

47.    Below that text, a "special offer just for you" is promoted that invites the consumer to fill out a form to "[f]ind schools" that are "right for you."

48.    Sometime in 2013, a fine print disclaimer was added to the website advising that it is not affiliated with the U.S. Armed Forces. The disclaimer appears at the bottom of the website beneath the copyright information in font substantially smaller than the main text. The disclaimer is not visible without scrolling down, and a consumer could submit personal information on the website without seeing it.

Advertisements

49.    The Sunkey Defendants have generated post-secondary education leads through advertisements that induce consumers to submit personal information for military recruitment purposes, but provide no indication that the information will be used to market post-secondary education. For example, the Sunkey Defendants ran the following advertisement on the internet job board, snagajob.com, from at least 2010 to January 2016:



50.    The form states: "Want more information about joining the U.S. Navy? You are under absolutely no obligation to join and your personal information will

25

not be shared with anyone else." Below the fields requesting consumer information is a checkbox that states, "Yes, I am interested in receiving more information from the U.S. Navy." Further below, appears the representation, "**This is an opportunity from the U.S. Navy.**"

### The Fanmail Defendants Generate Leads Through Deceptive Military Recruitment Websites

51.    Defendants Fanmail, Brolliar, and Dorman (collectively, the "Fanmail Defendants") have no official relationship with any branch of the U.S. Armed Forces. Nonetheless, they own and operate military recruitment themed websites, including air-force.com and army.com, which has several subdomains, including airforce.army.com, navy.army.com, marinecorps.army.com, and nationalguard.army.com.

52.    Over one hundred thousand unique visitors visit the Fanmail Defendants' webpages each month. In internet search results, army.com is described as follows:



Army.com: Enlist, Reenlist, Benefits
army.com/ ▾
Valuable information about the US Army, US Navy, US Air Force, Marine Corps, Coast Guard.
Army Job, Enlist, Re-enlist, or ... Enlist · Can I Join The Army? · ASVAB Information

53.    The internet browser tab for army.com reads, "Army.com: Enlist, Reenlist, Benefits." The internet browser tab for air-force.com reads, "Air-force.com: Learn more about enlisting in the U.S. Airforce."

54.    A consumer who visited army.com would see the following screen:



55.    The statement, "a non-government, privately sponsored website," located at the top of the page, did not appear on the website until mid-2016 and does not appear on any of the army.com subdomains dedicated to other branches of the U.S. Armed Forces. Comparably larger and bolder font that urges consumers to "Be More. join or reenlist today" appears next to a form through which consumers can submit their name and phone number.

56.    A disclaimer identifying Fanmail as the website operator and stating that the website is not affiliated with the military or government appears at the bottom of the page in font that is substantially smaller than the main text on the website. A

consumer could submit contact information on the form without seeing the disclaimer, as it becomes visible only after scrolling down several times.

57.     Placed next to the invitation on the landing page to "Be More. join or reenlist today" are boxes for the consumer to input name and phone number with a button labeled "Next" for the consumer to click once the information is entered. A consumer who clicks the "Next" button would be taken to the following or similar webpage containing a form that requests additional personal information:



58.     Language at the bottom of the form states, "I consent to being contacted at the phone number(s) above, including my wireless number if provided. I understand that these calls may be generated using an automated technology."

59.   Once the form is submitted, the following screen or a similar screen appears:



60.   Next to a picture of Uncle Sam, this webpage states, "WE SALUTE YOU! You have chosen the path of honor through service to your country." The webpage further states:

>   *Please be aware that our military is currently downsizing. Army.com wants you to know that there are more ways for you to serve your country than just military service. If you had a college education you could contribute through engineering, science, law, health care and more. For every soldier that serves our country there are many more citizens who provide the technology and service that give them the ability to serve safely. We urge you to understand all of your options as you make the choices that shape the rest of your life.

29

61.   Below that text appears a plug for "military-focused" Grantham University and a form to submit for additional information about the school.

62.   Previously, the army.com landing page contained boxes that a consumer could check for different branches of the military and for information on college. Text near the checkboxes stated:

> The US Army provides excellent training for exciting jobs with great pay. If you only have a GED, you will need college credits before enlisting in the Army. If you have prior service in the military, the US Army is still interested in reenlisting you. To increase your chances for a better job and higher pay, there are some education opportunities you can learn about, too! Get information about careers, money for school, and other possible bonuses and benefits of the US Army and Army Reserve. Join the US Army Ranks by having a recruiter contact you!
>
> **There is *no obligation* and your personal information will only be shared as needed to provide recruiters with military career and education information.**

(Emphasis added).

63.   Previous versions of the website linked consumers with specific schools and indicated that the Army recommended those schools. For instance, the website included a form that consumers could complete "To Find Schools Near You!" and the following plug for Grantham University that contained a hyperlink to the school's website: "Army.com invites you to explore **Grantham University's online degree**

**programs** designed for **military personnel**! Associate, bachelor's, and master's degree programs in Criminal Justice, Accounting, IT, Business, and more are available."

64.     Another feature on previous versions of the website to assist consumers in finding a school was the "School Finder" tab at the top of the landing page. Clicking on the tab took consumers to a webpage with "**ARMY.COM BE MORE**" emblazoned across the top with a form entitled "FIND DEGREE PROGRAMS NOW!" that enabled a consumer to input areas of interest to assist in finding a post-secondary school.

65.     Other websites owned and operated by the Fanmail Defendants, including air- force.com, collect consumers' personal information using similar webpages and statements.

66.     The Fanmail Defendants sell the information they collect through submissions on their websites to the Sunkey Defendants and to other lead aggregators that market post- secondary schools.

### The Sunkey Defendants Continue Their Deception after Consumers Submit Information on Defendants' Websites

67.     The information submitted through the Sunkey Defendants' websites and advertisements and the information that the Sunkey Defendants buy from third parties, including the Fanmail Defendants, goes to the Sunkey Defendants' call center.

31

The Sunkey Defendants also send an automated transmission of consumer information to individual military recruiters who have requested leads associated with specific zip codes. The Sunkey Defendants, however, do not send the information through official U.S. Armed Forces recruiting channels, and are not affiliated with it or acting on behalf of any of its branches.

68.     Sunkey's call center has initiated millions of outbound telemarketing calls to consumers who submitted information on Defendants' websites. Numerous of those calls have been made to numbers on the National Do Not Call Registry.

69.     During the calls, the Sunkey Defendants reinforce the misrepresentations on their websites that they either are, or are affiliated with, the military. Sales Representatives ("SRs") tell consumers that they are reaching out on behalf of the military or for military recruiting purposes, in accordance with training materials that direct SRs to tell consumers that they are calling "in regard to information requested on the military." Training materials also direct SRs, in order to "decrease the number of HANG-UPS," to "[e]mphasize the name of the branch and give a brief pause during the phrase delivery. 'Hello, this is **NAVY**… Enlist calling for John.'"

70.     The Sunkey Defendants' training materials instruct SRs to identify themselves in their voicemail greeting as working at "Military Verification Services."

71.     SRs' text messages to consumers urging them to call back further the representation that the Sunkey Defendants are the military or are contacting

consumers on its behalf. Instead of identifying themselves as representing the Sunkey

Defendants, the SRs identify themselves as being from "Military Verification."

Consumers have received text messages similar to the following:



72.     During the calls, the SRs, posing as military representatives, verify the

information that the consumer submitted. Call scripts direct them to gauge the

consumers' interest in receiving information on military friendly colleges, stating:

> I see that you would qualify to receive information on
> military friendly colleges, so if you were interested in
> continuing your education, that information could be sent
> along with your military information. Is that something
> that interests you? . . . The military supports earning a
> degree while serving in the military. This information can
> help you make an informed decision and you get the
> chance to SERVE, LEARN and EARN.

73.     If the consumer expresses interest in receiving information on "military

friendly colleges," the SR, based on the consumers' interests, recommends up to two

post-secondary schools. The SRs only recommend schools that have agreed to pay for

33

Defendants' education marketing leads.

74.    If the consumer agrees during the call to be contacted by the recommended schools, the Sunkey Entities sell the consumer's information as a lead to a lead aggregator for a price that ranges from $15 to $40. The lead aggregator passes the lead on to the schools mentioned during the call to enable them to contact and pitch the consumer.

75.    The Sunkey Defendants also email consumers to promote specific schools:



76.    This email, sent from "MilitarySpot.com Recruiter," states, in part, "Sorry we missed you on the phone. We called to verify the information you entered about joining the Military." The email continues,

> Did you know? One of the main reasons people join the military is to get money for college to further their education. Make sure you review our Military Friendly schools and don't get left behind. After all, a college diploma is something no one can ever take away from you.

The email then presents several schools as being "in our network."

35

77.     The Sunkey Defendants also use the email addresses they collect under the guise of military recruitment to advertise on behalf of other companies. The Sunkey Defendants have emailed consumers advertisements for products such as online dating, mortgages, credit repair services, and scholarships. They have also sold consumers' data to third parties who use it to market unrelated products and services and who may re-sell it or use it for other unknown purposes.

## VIOLATIONS OF THE FTC ACT

78.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

79.     Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

### Count I
### (Against All Defendants)

80.     In numerous instances, in connection with generating leads to sell to educational or other institutions, Defendants have represented, directly or indirectly, expressly or by implication, that they are, represent, or are affiliated with the United States military.

81.     In truth and in fact, Defendants are not the United States military or representatives of or affiliated with the United States military.

36

82.   Therefore, Defendants' representation as set forth in Paragraph 80 of this Complaint is false and misleading and constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## Count II
### (Against the Sunkey Defendants)

83.   In numerous instances, in connection with generating leads to sell to educational or other institutions, Sunkey Defendants have represented, directly or indirectly, expressly or by implication, that the United States military recommends or endorses a specific post-secondary school.

84.   In truth and in fact, in numerous instances in which Sunkey Defendants have made the representation set forth in Paragraph 83 of this Complaint, the United States military has not recommended or endorsed the specific post-secondary school.

85.   Therefore, the Sunkey Defendants' representation as set forth in Paragraph 83 of this Complaint is false and misleading and constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## Count III
### (Against All Defendants)

86.   In numerous instances, in connection with generating leads to sell to educational or other institutions, Defendants have represented, directly or indirectly, expressly or by implication, that the information they have collected from consumers

will be provided to the military for recruitment purposes and will not be shared with anyone else.

87.    In truth and in fact, in numerous instances in which Defendants have made the representation set forth in Paragraph 86 of this Complaint, the information Defendants collected from consumers was used for purposes other than military recruitment and was shared with others than military recruiters.

88.    Therefore, Defendants' representation as set forth in Paragraph 86 of this Complaint is false and misleading and constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## VIOLATIONS OF THE TELEMARKETING SALES RULE

89.    Congress directed the FTC to prescribe rules prohibiting abusive and deceptive telemarketing acts or practices pursuant to the Telemarketing Act, 15 U.S.C. §§ 6101-6108.  The FTC adopted the TSR in 1995, extensively amended it in 2003, and amended certain provisions thereafter. 16 C.F.R. Part 310.

90.    Among other things, the 2003 amendments to the TSR established a do-not-call registry, maintained by the FTC (the "National Do Not Call Registry" or "Registry"), of consumers who do not wish to receive certain types of telemarketing calls. Consumers can register their telephone numbers on the Registry without charge either through a toll-free telephone call or over the Internet at donotcall.gov.

91.    Consumers who receive telemarketing calls to their registered numbers

can complain of Registry violations the same way they registered, through a toll-free telephone call or over the Internet at donotcall.gov, or by otherwise contacting law enforcement authorities.

92.     The FTC allows sellers, telemarketers, and other permitted organizations to access the Registry over the Internet at telemarketing.donotcall.gov, to pay the fee(s) if required, and to download the numbers not to call.

93.     Under the TSR, a "telemarketer" means any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor. 16 C.F.R. § 310.2(ff). A "seller" means any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to the customer in exchange for consideration. *Id*. § 310.2(dd).

94.     Under the TSR, an "outbound telephone call" means a telephone call initiated by a telemarketer to induce the purchase of goods or services or to solicit a charitable contribution. 16 C.F.R. § 310.2(x).

95.     The TSR prohibits sellers and telemarketers from initiating an outbound telephone call to numbers on the Registry unless the seller (1) has obtained the consumer's express agreement, in writing, to place such calls, or (2) has an established business relationship with that consumer, and the consumer has not stated that he or she does not wish to receive such calls. 16 C.F.R. §§ 310.2(q), 310.4(b)(1)(iii)(B). Valid written consent to receive a live telemarketing call to a number on the Registry

requires: (i) a writing signed by the consumer, (ii) clearly evidencing authorization to receive calls placed on behalf of a specific seller, and (iii) stating the phone number to which such calls may be placed. 16 C.F.R. § 310.4(b)(1)(iii)(B)(1).

96.    The TSR prohibits sellers and telemarketers from calling any telephone number within a given area code unless the seller on whose behalf the call is made has paid the annual fee for access to the telephone numbers within that area code that are included in the Registry. 16 C.F.R. § 310.8.

97.    Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the TSR constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**The Sunkey Defendants Violated the Do Not Call Provisions of the TSR**

98.    The Sunkey Defendants are "telemarketers" engaged in "telemarketing" as those terms are defined in the TSR.

99.    The Sunkey Defendants initiated outbound telephone calls to consumers in the United States to induce the purchase of post-secondary educational services and other goods and services.

100.    The Sunkey Defendants have engaged in telemarketing by a plan, program, or campaign conducted to induce the purchase of educational services and

other goods and services by the use of one or more telephones and which involves more than one interstate telephone call.

101.   The Sunkey Defendants made no efforts to prevent their live telemarketing calls from being placed to telephone numbers on the National Do Not Call Registry.

102.   Consequently, the Sunkey Defendants made hundreds of thousands of calls to telephone numbers on the National Do Not Call Registry.

103.   Consumers whose telephone numbers were on the National Do Not Call Registry and who received the Sunkey Defendants' live telemarketing calls did not have a pre-existing business relationship with the Sunkey Defendants nor had they given express written consent to receive telemarketing calls specifically from the Sunkey Defendants or from the third parties to whom the Sunkey Defendants sold the sales leads.

### The Fanmail Defendants Assisted or Facilitated the Sunkey Defendants' Violations of the Telemarketing Sales Rule

104.   It is a violation of the TSR for any person to provide substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any practice that violates Sections 310.3(a), (c), or (d), or 310.4 of the TSR. 16 C.F.R. § 310.3(b).

105.   The Fanmail Defendants created websites that offered consumers the

41

opportunity to complete an online form to obtain additional information about military enlistment. The Fanmail Defendants sold the information they collected from these websites to lead aggregators, including the Sunkey Defendants so that they could market educational services and other goods and services to those consumers.

106. The Fanmail Defendants knew or consciously avoided knowing that the Sunkey Defendants were calling consumers whose telephone numbers were on the National Do Not Call Registry and who did not have a pre-existing business relationship with the Sunkey Defendants nor had they given express written consent to receive telemarketing calls specifically from the Sunkey Defendants.

## Count IV
### (Against the Sunkey Defendants)

107. In numerous instances, in connection with telemarketing, the Sunkey Defendants have initiated or caused others to initiate an outbound telephone call to a person's telephone number on the National Do Not Call Registry in violation of the TSR, 16 C.F.R. § 310.4(b)(1)(iii)(B).

## Count V
### (Against the Sunkey Defendants)

108. In connection with telemarketing, the Sunkey Defendants have initiated, or caused others to initiate, numerous outbound telephone calls to telephone numbers within a given area code when Defendants had not, either directly or through another

person, paid the required annual fee for access to telephone numbers within that area code that are included in the National Do Not Call Registry, in violation of the TSR, 16 C.F.R. § 310.8.

## Count VI
### (Against the Sunkey Defendants)

109.   In connection with telemarketing, the Sunkey Defendants have misrepresented, directly, or by implication:

    a.   their affiliation with, or endorsement of or sponsorship by, a person or government entity, including that the Sunkey Defendants are, represent, or are affiliated with the United States military; and

    b.   that the United States military recommends or endorses a specific post- secondary school.

110. The Sunkey Defendants' practice as alleged in Paragraph 109 of this Complaint is a deceptive telemarketing practice that violates the TSR, 16 C.F.R. §§ 310.3(a)(2)(vii) & (a)(4).

## Count VII
### (Against the Fanmail Defendants)

111.  In numerous instances, the Fanmail Defendants have provided substantial assistance or support to sellers or telemarketers whom the Fanmail Defendants knew or consciously avoided knowing, were engaged in the following

violations of the TSR:

    a.   initiating or causing others to initiate an outbound telephone call to a person's telephone number on the National Do Not Call Registry in violation of the TSR, 16 C.F.R. § 310.4(b)(1)(iii)(B); and

    b.   misrepresenting, directly or by implication (i) affiliation with or endorsement of or sponsorship by, a person or government entity, including that the Sunkey Defendants are, represent, or are affiliated with the United States military; and (ii) that the United States military recommends or endorses a specific post-secondary school.

112.   The Fanmail Defendants' acts or practices as described in Paragraph 111 above, are deceptive telemarketing acts or practices that violate the TSR, 16 C.F.R. § 310.3(b).

## CONSUMER INJURY

113.   Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act and the TSR. In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

114.   Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court

to grant injunctive and other ancillary relief to prevent and remedy any violation of any provision of law enforced by the FTC.

115.    Section 5(m)1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A), as modified by Section 4 of the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended, and as implemented by 16 C.F.R. § 1.98(d), authorizes this Court to award monetary civil penalties of up to $16,000 for each violation of the TSR on or before July 31, 2016, 16 C.F.R. § 1.98(d) (2013), and up to $40,000 for each violation of the TSR after July 31, 2016. 16 C.F.R. § 1.98(d) (2016). Defendants' violations of the TSR were committed with the knowledge required by Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A).

116.    This Court, in exercise of its equitable jurisdiction, may award ancillary relief to remedy injury caused by Defendants' violations of the TSR and the FTC Act.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff requests that this Court, as authorized by Sections 5(a), 5(m)(1)(A), and 13(b) of the FTC Act, 15 U.S.C. §§ 45(a), 45(m)(1)(A), 53(b), and pursuant to its own equitable powers:

A.    Enter judgment against Defendants and in favor of Plaintiff for each violation alleged in this complaint;

B.    Award Plaintiff monetary civil penalties from each Defendant for every

violation of the TSR;

C.     Enter a permanent injunction to prevent future violations of the FTC Act and the TSR by Defendants;

D.     Award such relief as the Court finds necessary to redress injury resulting from Defendants' violations of the FTC Act and the TSR, including but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill- gotten monies; and

E.     Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Respectfully submitted,

Dated: 9/6/2018

JAY E. TOWN
United States Attorney

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

JAMES M. BURNHAM
Deputy Assistant Attorney General

GUSTAV W. EYLER
Acting Director
Consumer Protection Branch

JOSHUA D. ROTHMAN
Trial Attorney
Consumer Protection Branch
U.S. Department of Justice
P.O. Box 386
Washington, DC 20044
202-514-1586
Joshua.D.Rothman@usdoj.gov

Don B. Long III
Assistant United States Attorney
1801 4th Ave. North
Birmingham, Alabama 35203
Tel: (205) 244-2001
Fax: (205) 244-2102

47

OF COUNSEL:

MALINI K. MITHAL
Acting Associate Director for Financial Practices
FEDERAL TRADE COMMISSION

Leah Frazier, DC # 492540
Quinn Martin, CA # 312429
Attorneys
600 Pennsylvania Ave., NW
Mail Drop CC-10232
Washington, DC 20580
(202) 326-2187, 2080 (direct)
(202) 326-3768 (facsimile)
lfrazier@ftc.gov, qmartin@ftc.gov